UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

In the Matter of the Application of

HAMPSHIRE RECREATION, LLC and
HAMPSHIRE CLUB, INC.,

              Plaintiffs/Petitioners,

for Order and Judgment Pursuant to 42 U.S.C.
Section 1983, the Fifth Amendment of the U.S.
Constitution, Article I, Section 7 of the New York
Constitution, Section 107 of the Public Officers
Law, Article 78 of the CPLR, and Declaratory
Judgment,

              -against-

THE VILLAGE OF MAMARONECK, THE
VILLAGE OF MAMARONECK BOARD OF
TRUSTEES, and THE VILLAGE OF
MAMARONECK ZONING BOARD OF
APPEALS,

             Defendants/Respondents.
------------------------------------x

Case No. 14-cv-7228 (CS)

Assigned Judge:

Hon. Judge Cathy Seibel

**AFFIRMATION OF**
**STEPHEN L. KASS**

      STEPHEN L. KASS, an attorney admitted to practice before the United States District Court for the Southern District of New York, affirms under penalty of perjury, as follows:

      1.    I am a partner at the law firm of Carter Ledyard & Milburn LLP, counsel for the Mamaroneck Coastal Environment Coalition, Inc. ("the Coalition"), and for Kelly Wenstrup, David Wenstrup, Jane Herzog, Jack Lusk, Jennifer Kronick, Jason Shapiro, Celia Felsher and John Cecil (collectively, "the Neighbors" and, together with the Coalition, the "Proposed Intervenors"). I submit this affirmation in support of the motion of the Proposed Intervenors to intervene in this action.

      2.    On June 4, 2014 Plaintiffs Hampshire Recreation, LLC and Hampshire Club, Inc. (collectively, "Hampshire") brought this action/special proceeding in New York State Supreme Court, Westchester County, against the Village of Mamaroneck, the Village of Mamaroneck

7529535.1

Board of Trustees (the "Trustees"), and the Village of Mamaroneck Zoning Board of Appeals (the "ZBA") (collectively, "the Village").

3. On August 12, 2014, Hampshire amended its complaint/petition (the "Amended Complaint") to add federal "taking" and other claims under 28 U.S.C. § 1983, after which the Village removed the case to this Court on September 8, 2014. Proposed Intervenors respectfully submit, for the reasons set forth below and in the accompanying Memorandum of Law, that they meet the requirements for both as-of-right and permissive intervention in this action.

4. This action arises from Hampshire's efforts to convert the Hampshire Country Club, historically a not-for-profit golf club compatible with the surrounding community, into a luxury condominium development in a sensitive environmental zone where such development is prohibited by the Village Zoning Code. In 2010 Hampshire acquired the Club, which had been closed for more than a year, in a distressed real estate sale. Shortly thereafter, Hampshire began to pursue two separate tracks to turn its distressed real estate investment into a bonanza. First, it began a campaign to persuade the Village to amend its coastal zone plan and Zoning Codes to authorize condominium development in the "Marine Recreation" zone where its clubhouse is located. Second, to satisfy its investors' demand for cash flow from the Club pending the condominium project's approval, Hampshire greatly expanded the frequency of non-member parties, weddings, golf tournaments and other catered events, all of which greatly increased traffic, noise and overflow parking in the surrounding area.

5. Hampshire's campaign to amend the Village Zoning Code to permit condominium projects in the coastal zone has proven highly unpopular throughout the Village and helped lead to the creation of the Coalition, which is dedicated to protecting the Village's coastal environment. The Board of Trustees has also twice declined, as it is entitled to do, to

2

entertain Hampshire's requests for such a change in the Village's long-standing coastal zoning, which has been recognized by the New York State as a leading example of responsible coastal zone planning and preservation. Hampshire's Amended Complaint seeks damages from the Village in the amount of "at least $55,000,000" as a result of the Trustees' lawful exercise of their discretion in deciding whether or not to entertain such a legislative request.

6. Hampshire's parallel efforts to increase its investors' cash flow by expanding non-member events also triggered neighborhood concern and led to the discovery that Hampshire (1) was not a non-profit entity, as required by Village Zoning, and (2) had failed to obtain or even apply for the required "special permit" to hold such events. After the Coalition and the Neighbors demanded that the Village enforce these zoning requirements, the Village commenced enforcement proceedings against Hampshire in 2013. As a result, Hampshire created a sham not-for-profit corporation that remained under Hampshire's control (with all officers and directors having direct or indirect financial ties to Hampshire) and then leased the Club to the new entity at a rental approximately equal to Hampshire's investors' annual cash flow expectations. Hampshire also belatedly applied for the required special permit from the ZBA.

7. After a vigorous public hearing on March 6, 2014, the ZBA issued a special permit to Hampshire to hold special events at its clubhouse but not on its golf course, which lies in the adjacent R-20 residential zone where the ZBA concluded it lacked the power to grant such a permit. Both Hampshire and the Proposed Intervenors filed Article 78 proceedings challenging that ZBA action, Hampshire because of the ZBA's refusal to extend the special permit to the R-20 Zone and the Proposed Intervenors because of the ZBA's failure to require Hampshire to operate as a genuine non-profit entity.

After the Trustees declined to entertain Hampshire's second request for a zoning amendment to permit condominium development in the Marine Recreation Zone, Hampshire served its Amended Complaint in July, 2014 and added its $55 million federal claims for declaratory judgment that included additional wildly inaccurate allegations against the Coalition and the Neighbors.

### The Proposed Intervenors

8. The Coalition, a New York State not-for-profit, was formed in early 2013 to address residents' environmental concerns in the Village. Among the Coalition's members are residents who live immediately adjacent to Hampshire's property, including its clubhouse, parking areas, and golf course, and elsewhere throughout the Village. This area of the Village is a low-density, shorefront residential community that has great natural beauty but is prone to flooding during storms, both from upland runoff and storm surges from Long Island Sound. (In 1993 one resident drowned on the Hampshire golf course when his car was swept off the adjacent roadway; more recently, the Sandy storm surge from Long Island Sound completely flooded the golf course and many surrounding homes). More broadly the Coalition seeks to protect and enhance the Village's waterfront preservation plan which the Coalition believes would be eroded if Hampshire's requested rezoning were approved. The Coalition and its members are therefore directly impacted by Hampshire's operations, violations of Village law and desired zoning relief.

9. The Neighbors all reside immediately adjacent or within close proximity to Hampshire. Kelly and David Wenstrup own property and reside at 1058 Cove Road, across the street from Hampshire's parking lots and clubhouse. They have lived at the address for eight years. Jane Herzog and Jack Lusk own property and reside at 1002 Cove Road, in close proximity to Hampshire's parking areas, clubhouse, and golf course, and along the shared private

road frequently used by large vehicles serving the club, including commercial garbage trucks, catering trucks, and party buses. They have lived at this address for 23 years. Jennifer Kronick and Jason Shapiro live at 1020 Cove Road, in close proximity to Hampshire's parking areas, clubhouse, and golf course, and along the shared private road used by large vehicles serving the club. They have lived at this address for three years. Celia Felsher and John Cecil live at 521 Eagle Knolls Road, in close proximity to the golf course, and along a shared private road used by the club. They have lived at this address for 28 years.

Hampshire's ability to conduct non-member events to meet its investor's cash flow expectations will continue to have significant and adverse effects on the Neighbors' ability to enjoy their properties. If Hampshire were to proceed with the condominiums project, that impact would be even greater and would adversely affect the character of residential areas as a whole, including the Neighbors' houses.

10. While the Coalition and the Neighbors are not named defendants or respondents in this action, the Amended Complaint contains numerous erroneous allegations against the Coalition and the Neighbors. Hampshire alleges that the Village's motives are the appeasement of a "group of neighbors seeking to shut the country club down." Amended Verified Petition and Complaint, at ¶ 1, Affirmation of Karen E. Meara ("Meara Aff."), Ex. H. Hampshire contends that "[a]s a result of this course of conduct, the Village finds itself in yet another lawsuit . . . precipitated by its collusion with a small, but vocal and litigious, neighborhood coalition[.]" *Id.* at ¶ 2. Hampshire alleges variously that the Village's actions are driven primarily by the interests of the Coalition, that the Village has colluded with the Coalition to shut down Hampshire, and that the Coalition commandeered the process before the ZBA to harass Hampshire. *Id.* at ¶¶ 48, 61, 69. All of these allegations, and others of similar import, are untrue,

but they cast the Coalition and the Neighbors in a highly pejorative light and entitle them to respond directly to such claims in this action.

11. In short, Hampshire effectively alleged that the Coalition and Neighbors are the true party in interest behind the Village and ultimately responsible for the Village's actions. The Coalition and the Neighbors have a substantial interest in defending themselves against these claims. Moreover, as discussed below, both the Coalition and the Neighbors would be adversely affected by a judgment in favor of Hampshire in this matter.

### The Proposed Intervenors are Entitled to Intervene in this Matter Pursuant to Federal Rule of Civil Procedure 24

12. The Proposed Intervenors are entitled to intervene as a matter of right in this action pursuant to Fed. R. Civ. P. 24(a)(2). They meet all required elements to intervene: they have filed a timely application, shown a substantial interest in the action, demonstrated that this interest may be impaired absent intervention and shown that their interests are not protected adequately by the parties to the action. *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992).

13. The Neighbors have, as a threshold matter, a property interest in their homes, which is itself recognized as a substantial interest allowing intervention. *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 869 (8th Cir. 1977). Hampshire seeks a judgment that would allow it to complete currently illegal building plans and conduct non-member events that would have a direct impact on the Neighbors' quality of life, safety, and property values. It is also likely that these interests could be impaired absent intervention since the Village has interests that differ from those of Proposed Intervenors. Indeed, it is established law that local legislative bodies, such as the Village, cannot adequately represent the interests of proximate neighbors. *Schwartz v. Town of Huntington Zoning Bd. of Appeals,* 191 F.R.D. 359–

60 (E.D.N.Y. 2000). The same is true of the Coalition, which is adverse to the ZBA in the Coalition's pending Article 78 proceeding and has been highly critical of the Village's failure to enforce the non-for-profit requirements of the Zoning Code against Hampshire. The Coalition is also opposed to any dilutions of the Village coastal zone regulations (leading Hampshire to launch personal attacks against the Coalition's President). Moreover, a judgment in this case upholding Hampshire's federal claims that the Village illegally denied or refused to consider Hampshire's rezoning request would effectively bind Coalition and the Neighbors on that issue and significantly affect the ultimate disposition of those requests.

14. The movants should also be allowed to intervene permissively pursuant to Fed. R. Civ. P. 24(b), as explained in detail in the accompanying Memorandum of Law. Permissive intervention may be granted to anyone who has a claim or defense that shares with the main action a common question of law or fact and where the intervention will not unduly delay or prejudice the original party's rights. *See Kheel*, 972 F.2d at 487. Here, Hampshire's continued violations of the Zoning Code are fundamentally interwoven with the interests of the Proposed Intervenors, with the same legal issues, including, the right of the Village to decline to entertain Hampshire's requested amendment to the Village's Zoning Code, at the center of both Hampshire's and the Proposed Intervenors' claims. This application is timely and will not prejudice any party's rights. Accordingly, permissive intervention is also warranted in this matter.

15. As required by Fed. R. Civ. P. 24(c), attached hereto is the pleading required by that rule. Note, however, that the Proposed Intervenors do not intend this pleading to be filed as their answer of record at this stage but reserve the right to make a dispositive motion concurrently with the motion proposed to be made by the Village.

16. For the reasons set forth above, the Proposed Intervenors respectfully request that the Court grant their application to intervene in this matter.


Dated: New York, New York
      October 23, 2014

*/s/ Stephen L. Kass*
Stephen L. Kass