UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In the Matter of the Application of

HAMPSHIRE RECREATION, LLC and
HAMPSHIRE CLUB, INC.,

                        Plaintiffs/Petitioners,

for Order and Judgment Pursuant to 42 U.S.C.
Section 1983, the Fifth Amendment of the U.S.
Constitution, Article I, Section 7 of the New York
Constitution, Section 107 of the Public Officers
Law, Article 78 of the CPLR, and Declaratory
Judgment,

                    -against-

THE VILLAGE OF MAMARONECK, THE
VILLAGE OF MAMARONECK BOARD OF
TRUSTEES, and THE VILLAGE OF
MAMARONECK ZONING BOARD OF
APPEALS,

                      Defendants/Respondents.
------------------------------------------------------------x

Case No. 14-cv-7228

Judge Cathy Seibel

**ORAL ARGUMENT REQUESTED**

# MEMORANDUM OF LAW OF PROPOSED INTERVENORS IN SUPPORT OF THEIR MOTION TO INTERVENE

7506898.3

## TABLE OF CONTENTS

Page No.

PRELIMINARY STATEMENT ..................................................................................................1

        The Proposed Intervenors ..................................................................................................2
        Hampshire's Repeated Violations ......................................................................................3
        Proceedings to Date ............................................................................................................6

POINT I        The Proposed Intervenors are Entitled to Intervene
                    As a Matter of Right ..........................................................................................8

                (i)     The Motion to Intervene is Timely ..........................................................9
                (ii)    The Proposed Intervenors Have a Substantial Interest in the
                         Underlying Litigation.............................................................................10
                (iii)   The Proposed Intervenors' Interests will be Impaired
                         Absent Intervention................................................................................12
                (iv)   The Village Cannot Adequately Protect the
                         Interests of the Proposed Intervenors ....................................................12

POINT II       In the Event the Court Declines to Allow the Proposed Intervenors to
                  Intervene As Of Right, the Court Should Allow Permissive Intervention
                  By the Proposed Intervenors ...........................................................................................13

        CONCLUSION.................................................................................................................15

Mamaroneck Coastal Environmental Coalition, Inc. (the "Coalition"), and Kelly Wenstrup, David Wenstrup, Jane Herzog, Jack Lusk, Jennifer Kronick, Jason Shapiro, Celia Felsher, and John Cecil (the "Neighbors," and together, with the Coalition, the "Proposed Intervenors") submit this Memorandum of Law in support of their Motion to intervene as parties in the captioned case pursuant to Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, pursuant to Federal Rule of Civil Procedure 24(b). For the reasons set forth below, the Motion should be granted.

## PRELIMINARY STATEMENT

The Proposed Intervenors move to intervene in this action between Hampshire Recreation, LLC ("HR LLC") and Hampshire Club, Inc. ("HC, Inc." and, together with HR LLC, "Hampshire") and the Village of Mamaroneck, the Village of Mamaroneck Board of Trustees (the "Trustees"), and the Village of Mamaroneck Zoning Board of Appeals (the "ZBA") (collectively, the "Village"). This action was commenced by Hampshire on June 4, 2014 in state court with a hybrid Article 78 Petition/Complaint, which Hampshire amended on August 12, 2014 to assert federal "taking" and other claims under 28 U.S.C. 1983 (as so amended, the "Complaint"). The Village then removed the case to this Court on September 8, 2014. Prior to removal, Hampshire's case had been assigned to Justice Linda S. Jamieson of the Supreme Court, Westchester County, along with a companion case against the Village brought by the Proposed Intervenors.

For many years prior to 2009, Hampshire Country Club operated as a not-for-profit club in the Village of Mamaroneck. Following the Club's insolvency, the property was acquired in 2010 by commercial investors from New World Realty, Inc. and Westport Capital, who formed HR, LLC and announced their intention to seek zoning changes to allow a high density luxury condominium project on the property. At the same time, HR, LLC began to use the Club to

1

generate revenue for its investors by holding frequent commercial (nonmember) events in violation of the zoning code. In 2013, in response to complaints from the Proposed Intervenors, the Village began an investigation of Hampshire and determined that the Club had not been operating as a not-for-profit entity, as required by Village zoning, and lacked the requisite special permit to hold nonmember events. In response, HR LLC hastily formed HC, Inc. and applied to the ZBA for a special permit, which was granted in part and denied in part, leading both Hampshire and the Proposed Intervenors to commence their separate Article 78 proceedings in state court challenging the ZBA's action.

While these proceedings were pending, Hampshire submitted two separate petitions to the Trustees to amend the Village Code to permit its condominium project. After the Trustees declined to entertain those requests, Hampshire amended its pending claims against the Village to seek $55,000,000 for alleged violations of 28 U.S.C. § 1983, in addition to declaratory relief. The thrust of Hampshire's allegations is that the Proposed Intervenors improperly influenced the Trustees to deprive Hampshire of its opportunity to build its currently illegal project. As explained below, the Proposed Intervenors should now be permitted the opportunity to represent their interests before this Court and to respond to those factually erroneous and legally baseless allegations.

The Proposed Intervenors

The Coalition, a New York State not-for-profit, was formed in early 2013 to address residents' environmental concerns. The Coalition's members include residents who live immediately adjacent to Hampshire's property and are directly impacted by Hampshire's operations and violations of Village law, as well as residents who live elsewhere in the Village. The area surrounding the Club is a low-density, shorefront residential community that has great

natural beauty but is prone to flooding during storms, both from runoff and storm surges from Long Island Sound. In 1992 a resident drowned on the golf course when his car was swept off the adjacent road. More recently, the Sandy storm completely flooded the golf course and surrounding areas.[1] The Coalition seeks to protect the Village's waterfront protection plan, which the Coalition believes would be eroded if Hampshire's requested rezoning were approved.

The Neighbors all reside immediately adjacent or within close proximity to Hampshire. Kelly and David Wenstrup own property and have resided for nine years at 1058 Cove Road, across the street from Hampshire's parking lots and clubhouse. Jane Herzog and Jack Lusk own property and have resided at 1002 Cove Road for 23 years, in close proximity to Hampshire's parking areas, clubhouse, and golf course, and along the shared private road frequently used by large vehicles serving the Club, including commercial garbage trucks, catering trucks, and party buses. Jennifer Kronick and Jason Shapiro have lived at 1020 Cove Road for three years, in close proximity to Hampshire and along the shared private road. Celia Felsher and John Cecil have lived at 521 Eagle Knolls Road for 28 years, in close proximity to the Club and along a shared private road. Hampshire's nonmember events continue to have significant adverse effects on the Neighbors' ability to enjoy their properties. If Hampshire were to proceed with its condominium project, that impact would be even greater and would adversely affect the character of residential areas as a whole, including the Neighbors' homes.

<u>Hampshire's Repeated Violations</u>

Hampshire Country Club is situated at 1025 Cove Road, Mamaroneck, New York and long operated as a genuine not-for-profit membership country club. In 2009, the Club closed due

---

[1] The golf course itself was built on landfill, and tidal water runs through the property. A seawall prevents the course from being largely underwater, as occurred in 2013 when the seawall broke.

3

to financial difficulties, and its property was acquired in 2010 by corporate investors who formed HR, LLC to operate the entity. This for-profit corporation has since used the location to aggressively generate revenue in order to achieve an attractive return on its investment.

Hampshire's property is divided between two zoning districts. The clubhouse is in a Marine Recreation ("MR") zoning district, while the majority of the golf course is located in an R-20 residential zoning district. The R-20 zoning district is a low-density residential district that allows for 20,000 sq. ft. lots for single family homes (as well as schools and churches). *See* Mamaroneck Village Code § 342-21, Affirmation of Karen E. Meara ("Meara Aff."), Ex. A–C. The only permitted uses in MR districts are recreational facilities and membership clubs. *See id.* at §§ 342-3, 342-35. A "membership club" is defined in the Village Code as a "not-for-profit corporation or organization with its facilities catering exclusively to members[.]" *See id.* Membership clubs must obtain special permits to host nonmember events. A condition of such a permit is that no more than 20% of club events are nonmember functions. *See id.* at § 342-35(B)(9)(a). Prior to a recent zoning amendment (as discussed below), such events were never permitted in R20 Districts.

Since purchasing the Club, Hampshire's new owners have embarked on an initiative to build a large luxury condominium complex on the property. Specifically, Hampshire plans to build a five-story complex with 100–120 condominium units and a 200–250 space parking garage. *See* Letter from Stephen L. Kass to Mayor Norman S. Rosenblum and Members of the Village of Mamaroneck Board of Trustees, Feb. 11, 2013, at 3, Meara Aff., Ex. D. These structures would dwarf the clubhouse and immediately adjacent residential neighborhood. The plans are inconsistent with local law, the Village Local Waterfront Revitalization Program and the Village Comprehensive Plan, which call for the preservation of the Village's quality of life,

7506781.10

small town character, and special natural environment. *See id.* at 2.  These plans are also inconsistent with the R-20 district, which allows single family homes, and the MR district, which allows not-for-profit membership club uses but not condominiums or other new residential uses.

Hampshire's proposal is also environmentally unsound.  The proposed waterfront complex is within the 100-year flood plain and adjacent to a single-family residential neighborhood.  The project calls for underground parking and is within a FEMA flood zone that has experienced significant flooding in the past.  The local privately-owned roadways are also inadequate for such a project, whose traffic would crowd already stressed intersections, affect neighborhood character and threaten the already limited access available for emergency service vehicles.

Shortly after acquiring the property, Hampshire began its efforts to maximize revenue by hosting numerous nonmember events, including weddings, corporate functions, religious ceremonies, dinner dances, and private parties.  Hampshire has advertised such events on its website, specifically targeting nonmembers.  These events violate the Village code because they were conducted without the necessary special permit and in violation of the percentage limitations on nonmember events.  These activities have caused significant disturbances to the Neighbors, including property damage, excessive noise and traffic, and parking and safety impacts.

The Neighbors have repeatedly complained that overflow parking from Hampshire events is a regular occurrence that has resulted in property damage and potential safety hazards. Attendees at Hampshire's events frequently park along Cove Road, a privately owned, extremely narrow street.  Attendees also park right on the Neighbors' lawns in an attempt to leave a clear path in the road, causing property damage.  By narrowing the width of Cove Road, the parked

cars create a potential safety hazard, as is evidenced from the attached photo taken in 2011 and submitted to the ZBA at a March 2014 public hearing. *See* Meara Aff., Ex. E. The child of two Neighbors, Kelly and David Wenstrup, was playing in his own front yard when he was hit by a parked car that was pushed into him by another Hampshire visitor trying to park on a lawn.

Hampshire's events have also resulted in increased truck, bus, and sanitation traffic, which has caused Cove Road to deteriorate and which has caused the roadway to become difficult for emergency vehicles to navigate. These events also cause excessive noise, largely from the unauthorized use of outdoor amplified sound. While the Village Code does not permit sound amplification unless expressly permitted by the ZBA as part of a special permit, these limits are rarely enforced in practice.

## Proceedings to Date

In September 2013 the Village initiated zoning enforcement proceedings in the New York courts.[2] In response, HR, LLC hastily formed HC, Inc., as a nominal not-for-profit corporation and placed its own officers and directors in charge of the new corporation. Hampshire then proceeded to lease the Club to the new entity at a rent approximately equal to Hampshire's investors' annual cash flow expectations. It also became apparent during these proceedings that Hampshire was conducting nonmember events without the necessary special permit and that Hampshire had not even applied for such a permit.

In late 2013 Hampshire belatedly sought the required special permit, which the Neighbors opposed unless Hampshire provided assurances that it would become a genuine not-for-profit organization with an independent board of directors and officers. After a vigorous public hearing on March 6, 2014, in which the Neighbors and Coalition members participated,

---

[2] The Village's action against Hampshire was largely settled by means of a Stipulation dated May 28, 2014. *See* May 28, 2014 Stipulation, Meara Aff., Ex. I.

6

the ZBA nevertheless issued a special permit on May 1, 2014. The application was granted only with respect to the MR portion of the property, with limited conditions, and denied with respect to the R-20 portion of the property because the ZBA determined that it had no authority to issue such special permits in R-20 zones.

In response, Hampshire commenced its Article 78 proceeding against the Village challenging the conditions of this special permit. *See* Verified Petition and Complaint, Meara Aff. Ex. G. Hampshire contended that the Village acted arbitrarily and capriciously in not granting the application with respect to the R-20 district and not permitting the use of the entire property for nonmember events as a preexisting nonconforming use. Simultaneously, the Coalition and the Neighbors initiated their own Article 78 proceeding against the ZBA and Hampshire contending that the issuance of the special permit was arbitrary and capricious and contrary to law because the special permit was granted despite the fact that Hampshire's operations caused traffic, parking, and noise impacts which had been unmitigated and that Hampshire was not a true not-for-profit organization. *See* Verified Petition, Meara Aff. Ex. J. Both of these special proceedings were assigned to Justice Linda S. Jamieson.

In January 2014 Hampshire submitted a petition to the Trustees seeking rezoning of the Club property to permit construction of its proposed condominium project, a request that the Trustees declined to entertain. In June 2014 Hampshire submitted a revised petition for rezoning to permit a slightly smaller condominium proposal, which the Trustees similarly declined to entertain. Under New York law, the Trustees had no obligation to consider such an amendment to the Village Code, a matter that is entirely legislative in nature. *See Matter of Wolff v. Town/Village of Harrison*, 30 A.D.3d 432, 433 (2d Dep't 2006); Letter from Stephen L. Kass at 1–2, Meara Aff., Ex. D.

7

As a result of its dissatisfaction with the Trustees' decisions, Hampshire amended its complaint/petition to assert "taking" and other claims under 28 U.S.C. § 1983. Specifically, Hampshire now seeks $55,000,000 in damages from the Village for allegedly preventing Hampshire from engaging in a productive use of its property and for costs it has incurred in developing its condominium proposal. In view of these new federal claims, the Village promptly removed the case to this Court.

While the Coalition and the Neighbors are not named defendants in this action, Hampshire's amended pleading is filled with allegations against them, primarily to the effect that the Coalition and the Neighbors are the instigators behind the Village's actions and the true parties in interest in this matter. *See* Affidavit of Stephen L. Kass, at ¶ 10. Hampshire's claims for relief also directly implicate the Neighbors through its erroneous charge that the decisions of the Village are irrational and contrary to law because such decisions have been enacted to appease the Coalition and the Neighbors. *See id.*

Moreover, any decision in this case will materially affect the Neighbors' and the Coalition's concerns for their community and its environment, including the Village's zoning and coastal development, as well as local traffic, noise and community character. The Proposed Intervenors therefore respectfully request the Court to permit them to intervene pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b). A pleading pursuant to Fed. R. Civ. P. 24(c) is attached to the enclosed Affirmation of Stephen L. Kass.

## POINT I

**The Proposed Intervenors are Entitled to Intervene as a Matter of Right**

The Proposed Intervenors satisfy all elements of Federal Rule of Civil Procedure 24(a)(2) and should be permitted to intervene as defendants as a matter of right. Rule 24(a)(2) states:

8

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

A party seeking to intervene "must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992); *Schwartz v. Town of Huntington Zoning Bd. of Appeals*, 191 F.R.D. 357, 359 (E.D.N.Y. 2000).

### (i)  The Motion to Intervene is Timely

In making a timeliness determination, courts generally consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Commack Self-Service Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 100 (E.D.N.Y. 1996) (citations and internal quotation marks omitted). Motions to intervene are generally timely when they are filed promptly after the intervenor learns of the underlying filing. *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, Case No. 09 Civ. 9476, 2013 WL 837565, at *7 (S.D.N.Y. March 6, 2013); *Conmack Self-Service*, 170 F.R.D. at 100 (motion filed 46 days after the filing of the amended complaint was timely).

In this case, the motion is clearly timely. The Notice of Removal was filed on September 8, 2014, and permission to make this motion was sought on October 1, 2014. Nothing of substance has occurred in this matter since the filing of the notice of removal, and no substantial matters occurred in the state court proceeding prior to removal. Under these circumstances, there can be no dispute that this motion is timely.

9

### (ii) The Proposed Intervenors Have a Substantial Interest in the Underlying Litigation

The Proposed Intervenors have an interest on the basis of their property holdings. "Interests in property are the most elementary type of right that Rule 24(a) is designed to protect." *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 869 (8th Cir. 1977) (citations and internal quotation marks omitted) (intervention appropriate where family planning clinic sought to buy property and neighborhood association sought to intervene in opposition to preserve property values). It is a well settled proposition that neighboring property owners have substantial interests in actions concerning the underlying property. *Wedgewood Ltd. Partnership v. Township of Liberty, Ohio*, Case No. Civ.A.2:04-CV-1069, 2005 WL 1211305, at *1–2 (S.D. Ohio, May 20, 2005). In *Wedgewood* a property owner sued a city for refusing to allow development and a foundation composed of neighbors to the proposed development was permitted to intervene "by reason of its members' status as neighboring property owners." *Id.*

In this case, too, the Neighbors seek to protect their property interests. The Neighbors have suffered negative impacts due to unauthorized nonmember events that have resulted in increased traffic, road deterioration and safety hazards. These events have also created substantial noise impacts with detrimental effects both on the Neighbors' day-to-day quality of life. Accordingly, the relief that Hampshire seeks—a declaration that "Hampshire's use of the entire Property for nonmember events is a legal preexisting nonconforming use not subject to the Village's Special Permit requirements . . ."—would have tangible adverse effects on the Neighbors as these events would continue unmitigated without needed local regulation. *See* Complaint, at 50, Meara Aff., Ex. H.

The Coalition seeks to enforce the Village's waterfront protection plan, which the Coalition believes would be eroded if Hampshire's requested rezoning were approved. If Hampshire were to proceed with the condominium project, this impact would adversely affect the character of the Village's coastal and residential areas, including property owned by members of the Coalition and that of the Neighbors specifically. Ultimately, the relief Hampshire seeks—$55,000,000 in monetary damages, an annulment of the Trustees' denial of Hampshire's petitions to rezone its property, and an order that the Trustees reconsider those petitions—would significantly affect the Coalition and, by virtue of the continuing threat of liability, make it far more likely that the Trustees would feel compelled to approve such an amendment, regardless of its impacts on community character, the environment, neighborhood safety and the property values of community residents. *See id.* at ¶¶ 174, 206, 217. These interests have been found to be protectable in the context of anticipated local environmental damage. *See County of St. Louis v. Thomas*, 162 F.R.D. 583, 584–87 (D. Minn. 1995) (public interest groups permitted to intervene in action between counties and U.S. Forest Service concerning proposed visitor restrictions in forest).

The Proposed Intervenors also have a direct interest in the outcome of this case and the environmental issues at stake. The precedents are clear in this regard that neighboring property interests give rise to a substantial interest allowing intervention. *See Planned Parenthood of Minnesota*, 558 F.2d at 869. In addition, the Proposed Intervenors' interests have been put at issue by Hampshire's pleading, in which Hampshire has alleged repeatedly that the Coalition and the Neighbors are the true parties in interest and are responsible for the Village's actions. This gives rise to an interest on the part of the Proposed Intervenors to defend themselves against these false and irresponsible accusations and claims.

### (iii) The Proposed Intervenors' Interests will be Impaired Absent Intervention

It is a settled proposition that property interests, left unattended in litigation, may be impaired absent intervention. *See Wedgewood*, 2005 WL 1211305, at *1–2 (where developer sued city to force development, court found that the interests of neighboring property owners would be impaired absent their intervention); *Schwartz v. Town of Huntington Zoning Bd. of Appeals,* 191 F.R.D. 357, 358–59 (E.D.N.Y. 2000). Here, the underlying litigation concerns Hampshire's claims that a special permit is not required for them to conduct commercial, nonmember events on their property and the attempts by Hampshire to circumvent the Village's review process of its condominium development plans. Accordingly, the relief to be considered by this Court has the potential to substantially impair the Neighbors' and the Coalition's interests in their property and community wellbeing should this matter be decided without their involvement. Accordingly, the Proposed Intervenors satisfy this element of Rule 24(a)(2).

### (iv) The Village Cannot Adequately Protect the Interests of the Proposed Intervenors

It is established law that a local legislative body cannot adequately represent the interests of proximate neighbors. *See Schwartz*, 191 F.R.D. at 359–60 (zoning board could not represent intervenors' interests due to adversarial litigation history between the two entities); *U.S. v. 27.09 Acres of Land, More or Less Situated in the Town of Harrison*, 737 F.Supp. 277, 278, 289 (S.D.N.Y. 1990) (in condemnation action, county could not represent the interests of neighbors, where neighbors had environmental concerns and county was concerned with preserving the parcel for future uses). "Without at all suggesting that the [town] will not vigorously defend their own interests and those of the constituency at large, the fact remains that the interests of contiguous neighbors may not be entirely congruent and coextensive with those of the administering government or the general population." *Wedgewood*, 2005 WL 1211305, at *2.

Here, the Village cannot adequately represent the interests of the Neighbors and the Coalition. While the Village represents the interests all residents, the Neighbors and the Coalition represent the interests of residents specifically and proximately impacted by Hampshire's actions, as well as those of other Village residents impacted by Hampshire's actions. The Village and the Proposed Intervenors have different objectives and goals in this matter. While the residents of the Village as a whole may ultimately be indifferent to Hampshire's unlawful nonmember events, the Neighbors have an immediate and real interest in protecting their property interests and neighborhood from traffic, parking, and noise. In addition, the Coalition and its members, as local property owners, have a specific interest in preserving the unique coastal waterfront from redevelopment which differs from that of the Village. *See County of St. Louis v. Thomas*, 162 F.R.D. 583, 585–88 (D. Minn. 1995) (local environmental public interest group had differing interest from government entity, based on interest in property and property valuations). Furthermore, the Coalition as well as the Neighbors have a history of adverse litigation with the Village regarding these very issues, as evidenced by the Proposed Intervenors' pending Article 78 proceeding against the ZBA. Accordingly, it is evident that the Proposed Intervenors cannot be represented adequately by the Village.

## POINT II

### IN THE EVENT THE COURT DECLINES TO ALLOW THE PROPOSED INTERVENORS TO INTERVENE AS OF RIGHT, THE COURT SHOULD ALLOW PERMISSIVE INTERVENTION BY THE PROPOSED INTERVENORS

Should this Court decline to recognize the right of the Proposed Intervenors to intervene, this Court should nonetheless allow permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Rule 24(b) provides, in pertinent part, that permissive intervention may be granted to anyone who "has a claim or defense that shares with the main action a common

question of law or fact . . ." and where such intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b); *New York News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir. 1992). Rule 24(b) "is to be liberally construed in favor of intervention." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, Case No. 09 Civ. 9476, 2013 WL 837565, at *7 (S.D.N.Y. March 6, 2013). Courts also consider whether the intervenor "will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id.* (citations and internal quotation marks omitted).

The proposed intervention shares common questions of law and fact with the underlying action. *See U.S. v. 27.09 Acres of Land, More or Less Situated in the Town of Harrison*, 737 F.Supp. 277, 278, 289 (S.D.N.Y. 1990) (where government sought land condemnation against local entity, group of proximate neighbors opposing intervention shared common questions of law and fact with the underlying action); *Franz v. West Bank Marina and Yacht Club*, Case No. CV 11-6073(SJF)(AKT), 2012 WL 3039941, at *1–3 (E.D.N.Y. June 15, 2012) (in maritime insurance dispute, insurer sought to intervene in action between owner and marina and court found overlapping factual and legal issues as both actions were premised on alleged negligence of third party defendants).

It is clear that there are common questions of law and fact as between the underlying action and the claims that the Proposed Intervenors seek to address. Hampshire has put such factual questions at issue in its pleading, which alleges that the Coalition and the Neighbors are the responsible parties with respect to the allegedly unlawful actions of the Village. Moreover, the underlying issues in this matter concerning Hampshire's continued violations of the zoning code by hosting nonmember events are fundamentally factually interwoven with the essential

interests of the Neighbors in the well-being of the neighborhood and their property interests. Similarly, the underlying issue of the merits of the rezoning petitions are interwoven with the interests of the Coalition in the landscape and environmental safety of their community. In addition, the same legal questions with respect to the Village are at issue with respect to the Proposed Intervenors. These issues concern the Trustees' decisions with respect to the review of Hampshire's rezoning petitions and the status of the ZBA's special permit requirement for nonmember events. These overlapping issues of law and fact are reflected here by the Proposed Intervenors' filing of their state court action, which concerns the same legal and factual issues as this matter with respect to the issue of the necessity and disposition of the special permit.

Motions to intervene are timely when commenced promptly following the underlying filing. *U.S. Polo Ass'n*, 2013 WL 837565, at *7. A two month delay in the filing of a motion to intervene was found to be "insignificant[.]" *West Bank Marina*, 2012 WL 3039941, at *2. Here, the Motion is clearly timely and will not cause delay. As this proposed intervention is timely and will cause no delay, there will be no prejudice to the parties in this matter.

The Proposed Intervenors will also contribute to the development of the factual issues in this suit and will contribute to the equitable adjudication of this action. Hampshire's pleading makes clear that the Proposed Intervenors have been substantially involved in this matter for a long period of time and are a key party to these claims. Accordingly, the Proposed Intervenors' presence will help flesh out the essential factual issues and will facilitate the most efficient use of judicial resources.

## CONCLUSION

For the foregoing reasons, the Proposed Intervenors respectfully request the Court to issue an order granting the motion of the Proposed Intervenors to intervene as of right under

Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, to permit the Proposed Intervenors to intervene pursuant to Rule 24(b).

Dated:  October 23, 2014
        New York, New York

**CARTER LEDYARD & MILBURN LLP**

By _____

Of Counsel:

    Christopher Rizzo
    Karen E. Meara
    Noah Hertz-Bunzl

Stephen L. Kass
CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232
Email: kass@clm.com

*Attorneys for Proposed Intervenors*