UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

In the Matter of the Application of

HAMPSHIRE RECREATION, LLC, and
HAMPSHIRE CLUB, INC.,

                              Plaintiffs,


            - against -

                                                  No. 14-CV-7228 (CS)

                                                  **OPINION & ORDER**

THE VILLAGE OF MAMARONECK,
THE VILLAGE OF MAMARONECK BOARD OF
TRUSTEES, and THE VILLAGE OF MAMARONECK
ZONING BOARD OF APPEALS,

                              Defendants.


─────────────────────────────────────────


Appearances:

Michael D. Zarin
David J. Cooper
Zarin & Steinmetz
White Plains, New York
*Counsel for Plaintiffs*

Edmund C. Grainger, III
Patricia W. Gurahian
McCullough, Goldberger & Staudt LLP
White Plains, New York
*Counsel for Defendants*

Seibel, J.

          Before the Court are Plaintiffs' Motion to Remand, (Doc. 40), and Defendants' Cross-

Motion to Dismiss Plaintiffs' Complaint, (Doc. 43).  Plaintiffs move to remand their state law

claims to the New York Supreme Court and stay all federal claims pending resolution of the

action in state court, and Defendants cross-move to dismiss all federal law claims and certain

state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated

below, Defendants' Cross-Motion to Dismiss is GRANTED as to the federal claims, and I

decline to exercise supplemental jurisdiction over the state law claims.  Accordingly, pursuant to

28 U.S.C. § 1367(c)(3), Plaintiffs' state law claims are hereby remanded to the New York

Supreme Court, and Plaintiffs' Motion to Remand pursuant to 28 U.S.C. § 1367(c)(1) and (2) is

DENIED as moot.[1]

## I.    <u>Background</u>

### A.  <u>Facts</u>

For purposes of this Motion, the Court accepts as true the facts (but not the conclusions)

alleged by Plaintiffs in the Second Amended Complaint ("SAC").  (Doc. 33.)

Plaintiff Hampshire Recreation, LLC ("Hampshire Recreation") is a Delaware

corporation that owns approximately 116 acres of property (the "Property") in the Village of

Mamaroneck (the "Village").  (SAC ¶¶ 7-9, 18.)  Hampshire Country Club (the "Club"), which

is operated by Plaintiff Hampshire Club, Inc., is located on this property and has hosted both

member and non-member events.  (*Id.* ¶¶ 10, 18-20.)  In 1985, Defendant Village Board of

Trustees (the "Village Board") created a new Marine Recreation ("MR") zoning district in order

to revitalize the local waterfront.  (*Id.* ¶ 21.)  Approximately four acres of the Property, including

the clubhouse and swimming pool, fell within the MR District, while approximately 106 acres,

---

[1] Plaintiffs' notice of motion indicates that they move to remand pursuant to 28 U.S.C. § 1441(c)(2), which requires the district court to, upon removal of actions described in § 1441(c)(1), sever any claims "not within the original or supplemental jurisdiction of the district court," 28 U.S.C. § 1441(c)(1)(B).  But Plaintiffs' briefing relates exclusively to § 1367(c)(1) and (2).  (*See* Plaintiffs' Memorandum of Law in Support of Plaintiffs/Petitioners' Motion for Remand, (Doc. 41), 14.)

including the Club's golf course and parking lot, fell within the original "R-20"[2] zoning district.[3] (*Id.*)  The rezoning did not affect the Club's operations, and the Club continued to host member and non-member events on the Property, (*id.* ¶ 24), which Hampshire Recreation acquired in June 2010, (*id.* ¶ 28).

In February 2012, Defendant Village enacted its current "Comprehensive Plan" (the "Plan"), (*id.* Ex. EE), pursuant to state law, N.Y. Village Law § 7-722, which involved "an extensive community-wide effort . . . to evaluate its then-current zoning regulations and determine its planning goals for the future," (SAC ¶ 30).  The Plan noted that almost the entirety of the Club is located within a "critical environmental area[]" and that therefore "it may be appropriate to reconsider the R-20 zoning of the [Property]."  (*Id.* Ex. EE, at 63.)[4]  The alternative zoning options put forth by the Plan focused on preserving the Property's open space. (*Id.* at 64.)

Hampshire Recreation thereafter proposed rezoning the Property to require that at least seventy-five percent of the site be preserved as open space, (*id.* ¶ 39), and to limit the density of development as compared to what was permissible under R-20 zoning, (*id.* ¶ 41).  Hampshire Recreation proposed a project under the proposed new zoning that involved constructing a 121-unit residential building on one acre of the site, and maintaining over ninety percent of the Property as open space, (*id.* ¶ 42), and met with members of the Village Board in April 2012 to review the proposal, (*id.* ¶ 44).  After Hampshire Recreation publicly announced its intent to submit its rezoning proposal, a group of residents formed the Mamaroneck Coastal

---

[2] R-20 zoning is residential zoning for single-family homes with a minimum lot size of 20,000 square feet.  (SAC Ex. EE, at 32.)

[3] The remaining six acres of the property are apparently within the Town of Mamaroneck.  (*Id.* at 64.)

[4] For the reasons discussed below, I may consider this document to the extent undisputed.

Environmental Coalition (the "Coalition") to challenge the proposed development.  (*Id.* ¶ 45.)[5]

The Coalition filed several complaints with the Village in February 2013, alleging that

Hampshire Recreation was permitting "over-parking, truck traffic and undue noise" and violating

the Village's laws requiring that membership clubs be operated by a not-for-profit corporation

and that entities holding non-member events do so pursuant to a special permit.  (*Id.* ¶¶ 50-52.)

On September 27, 2013, the Village issued to Hampshire Recreation a notice of violation

("NOV") for holding a non-member event without a special permit issued by Defendant Village

of Mamaroneck Zoning Board of Appeals (the "ZBA") and for failing to file certain forms with

the Internal Revenue Service that are required by not-for-profit corporations.  (*Id.* ¶¶ 56, 60.)  In

November 2013, the Village initiated proceedings against Plaintiffs in Village Justice Court

based upon the alleged violation of the non-member regulations cited in the NOV, and also filed

suit in New York Supreme Court.  (*Id.* ¶¶ 62-64.)  The Village's lawsuit sought to enjoin

Plaintiffs' non-member events, as well as any "recreational or commercial operations" at the

Property.  (*Id.* ¶ 64.)  The Supreme Court action was initially resolved on December 6, 2013, via

a stipulation of settlement, in which the parties agreed that Plaintiffs would apply to the ZBA for

a special permit to hold non-member events and that a decision on the application would be

rendered by April 7, 2014.  (*Id.* ¶ 74.)  If the application was not determined by this date, the

parties would continue litigating in state court.  (*Id.*)  Accordingly, Plaintiffs submitted an

application to the ZBA on December 11, 2013.  (*Id.* ¶ 77.)

On January 28, 2014, Hampshire Recreation filed its first rezoning petition with the

Village Board (the "First Rezoning Petition").  (*Id.* ¶ 118.)  The submission included an

alternative proposal – a conventional subdivision proposal under the existing R-20 zoning for

---

[5] This Court rejected the Coalition's motion to intervene on December 15, 2014.  (Doc. 18.)

102 single-family lots (the "R-20 Alternative") – that Hampshire Recreation requested that the Village place on the Planning Board's agenda "for initial review at a pre-submission conference" pursuant to Village regulations,[6] in the event the rezoning was rejected.  (*Id.* ¶ 122.)

Plaintiffs' special permit application was placed on the agenda for the ZBA's January 2, 2014 and February 6, 2014 meetings, but both meetings were cancelled, according to Plaintiffs, due to pressure from the Coalition.  (*Id.* ¶¶ 77, 80-84.)  Following the second cancellation, the Village directed Plaintiffs to request a special permit for non-member events in both the MR and R-20 zoning districts, which Plaintiffs did.  (*Id.* ¶ 85-86.)  Plaintiffs' First Rezoning Petition was placed on the agenda for the Village Board's February 10, 2014 meeting, (*id.* ¶ 123), during which members of the Coalition opposed consideration and acceptance of the petition, (*id.* ¶¶ 124-26).  The Village Board ultimately decided not to accept the petition and declined to refer the R-20 Alternative to the Planning Board.  (*Id.* ¶¶ 130, 132.)

A public hearing on Plaintiffs' application for a special permit was held on March 6, 2014, during which both Plaintiffs and the Coalition presented, (*id.* ¶¶ 88-97), and the ZBA decided to adjourn its decision until its April 3, 2014 meeting, (*id.* ¶ 98.)  The ZBA ultimately adopted a resolution on May 1, 2014, (Pfeffer Aff. Ex. A),[7] granting Plaintiffs a partial special permit.  The ZBA concluded that pursuant to Section 342-35(9)[8] and Article X of the Zoning

---

[6] The Village's Zoning Code includes the following instructions regarding application procedures:

    A.  Presubmission.  Prior to a formal submission, the applicant should meet in person with the Planning Board and/or its designated representative to discuss the proposed site development plan in order to determine the requirements which should be incorporated in the development and submission of the site development plan.

Village of Mamaroneck, N.Y. Code, § 342-77.

[7] "Pfeffer Aff." refers to Affidavit of Daniel Pfeffer in Support of Plaintiffs' Verified Petition and Complaint, (Doc. 34), which is incorporated in the SAC, (SAC ¶ 1).  As discussed below, I may consider the documents attached to the Pfeffer Aff., although not the affidavit itself.

[8] Section 342-35 of the Village's Zoning Code specifies accessory uses permitted in MR districts and expressly allows non-member events.  Section 342-35(B)(9)(a) further states that:

Code,[9] it had authority to grant a special permit to Plaintiffs to conduct non-member events on the portion of the Property zoned MR, but that it had no jurisdiction to grant a special permit for Plaintiffs to do the same on the portion of the Property zoned R-20, citing Sections 342-20 and 342-21 of the Zoning Code.[10] (*Id.* at 2.) The ZBA thereby granted the special permit "exclusively for the MR zoned portion" of the Property and denied it with respect to the R-20 zoned portion of the site. (*Id.* at 2-3.)[11] The ZBA indicated that the special permit would be valid for an initial probationary period of three years. (*Id.* at 3.)

Because Plaintiffs' application for a special permit was not decided by April 7, 2014, the parties returned to state Supreme Court and signed a second stipulation on May 27, 2014 in order to settle the zoning enforcement lawsuit brought by the Village. (SAC ¶ 151.) Pursuant to the settlement stipulation, the Village agreed to propose a zoning text amendment that would allow Hampshire Club, Inc. to "utilize its entire Property for nonmember events pursuant to the

---

[a]ny club which intends to conduct events or activities that are not restricted to members only or that are not hosted or financially guaranteed by a member (to be known as "nonmember events") must first obtain a special permit from the [ZBA] in accordance with the procedures set forth in Article X. Such special permit shall be for periods of no more than three years.

[9] Article X of the Zoning Code sets forth the procedures for obtaining a special permit:

After public hearing and consideration of all factors involved, the [ZBA] shall make its findings and render its decision. If it finds that all appropriate conditions have been satisfactorily met, it shall grant the application and approve the proposed special use, subject to such terms as are prescribed in this chapter or as the Board may impose . . . .

Village of Mamaroneck, N.Y. Code, § 342-72.

[10] Section 342-20 of the Village's Zoning Code makes clear that the uses articulated in the Code "are the only uses permitted in residence districts." Section 342-21 specifies accessory uses permitted in R-20 districts, and – unlike the section governing the MR district – does not mention non-member events.

[11] In order to ensure adequate parking for the non-member events to be held on the MR zoned portion of the Property, the ZBA's resolution permitted Plaintiffs to use parking facilities in the vicinity of the clubhouse "regardless of which zoning district such facilities are located." (Pfeffer Aff. Ex. A, at 4.) Plaintiffs contend that this statement underscores the "arbitrary and capricious" nature of the ZBA's decision, as it "permit[ted] Hampshire Club to use portions of the Property located in the R-20 District for nonmember events." (SAC ¶¶ 105, 107.) Any arguments concerning the arbitrariness of the ZBA's decision should be raised on remand as part of Plaintiffs' state law claims, as discussed below.

conditions imposed upon all clubs in the MR District under Section 342-35 of the Zoning Code."
(*Id.*)

On June 12, 2014, Hampshire Recreation submitted a revised rezoning petition to the Village Board (the "Revised Rezoning Petition"), which preserved the same amount of open space but reduced the proposed density of condominium units.  (*Id.* ¶ 135.)  At a June 16, 2014 work session, the Village Board declined to hear from Plaintiffs' representatives and instead convened a closed executive session for advice of counsel, (*id.* ¶¶ 138-40), and then adjourned the session for further consideration, (*id.* ¶ 143).  According to Plaintiffs, the Village Board again went into executive session at its June 23, 2014 meeting, ultimately voting not to consider the Revised Rezoning Petition.  (*Id.* ¶¶ 144-46.)

Approximately one month later, the Village Board held a public hearing regarding the Village's proposed zoning text amendment pursuant to the May 27, 2014 stipulation.  (*Id.* ¶ 151.)  At the hearing, Coalition members suggested changes to the amendment.  (*Id.* ¶ 152.)  The Village Board then held a private executive session, as it had during its consideration of Plaintiffs' rezoning petitions, to discuss the proposed zoning amendment with counsel.  (*Id.*)  After the executive session had concluded, the Village Board adjourned the proposal and did not indicate whether it would accept the Village's proposed amendment or modify its language.  (*Id.* ¶ 153.)[12]

---

[12] I may take judicial notice of the fact that the zoning text amendment was eventually adopted.  Current Village law, following the Village Board's amendment on September 22, 2014, now indicates that "[a] special permit to conduct nonmember events issued pursuant to this subsection shall apply to the entirety of the club property notwithstanding that a portion of such property extends beyond the MR Zoning District into an adjoining residential zoning district."  Village of Mamaroneck, N.Y. Code, § 342-35(B)(9)(a).

B.  Procedural History

Plaintiffs filed their complaint against Defendants in the New York Supreme Court on June 4, 2014, (Doc. 1 Ex. 1), alleging four causes of action under state law, and an amended complaint on August 12, 2014, (*id.* Ex. 2), adding two claims under 42 U.S.C. § 1983 alleging violations of the Equal Protection Clause of the Fourteenth Amendment and the right to petition under the First Amendment, as well as a third claim alleging an unconstitutional taking.[13] Defendants removed to this Court on September 8, 2014.  (Doc. 1.)  Plaintiffs filed a second amended complaint in this Court on January 5, 2015, (Doc. 33), and on January 20, 2015 moved to remand their state law claims to the New York Supreme Court and stay all federal claims pending resolution of the action in state court, (Doc. 40).  On March 20, 2015, Defendants filed a cross-motion to dismiss all federal law claims and certain state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 43.)  Because my decision on the motion to dismiss moots the motion to remand, I discuss only the former below.

II.  **Legal Standards**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

---

[13] Although (like the SAC) the third claim did not cite § 1983 or any constitutional provision, it seems from the context and the parties' arguments that Plaintiffs intended a federal claim under the Fifth and Fourteenth Amendments.

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks

omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss, the court is entitled to consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it
by reference, (2) documents 'integral' to the complaint and relied upon in it, even
if not attached or incorporated by reference, (3) documents or information
contained in defendant's motion papers if plaintiff has knowledge or possession of
the material and relied on it in framing the complaint, (4) public disclosure
documents required by law to be, and that have been, filed with the Securities and
Exchange Commission, and (5) facts of which judicial notice may properly be taken
under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation

marks omitted); *cf. Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)

("Where plaintiff has actual notice of all the information in the movant's papers and has relied

upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6)

motion into one under Rule 56 is largely dissipated.").  To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents."  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted).  Plaintiffs have attached numerous documents to the SAC, and have incorporated in it, (*see* SAC ¶ 1), an affidavit attaching numerous additional exhibits.  I may consider all of them.  Defendants provide various documents with their opposition papers.  They are mostly public records which I may consider.  I may also consider documents such as the special permits Plaintiffs received and those that were granted to other membership clubs in the Village, (*see* Pfeffer Aff. Ex. O; Grainger Aff. Ex. xviii),[14] on the ground that the SAC makes substantial reference to them, (*see, e.g.*, SAC ¶¶ 3, 78, 108, 110-11, 181-83), thereby incorporating them.  *See Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) (court permitted to "take judicial notice of all documents in the public record, including the decisions of the ZBA . . . and the provisions of the Village zoning code").  I do not consider newspaper articles, letters, affidavits or the like.

## III.   Federal Claims

### A.  Equal Protection Clause

Plaintiffs argue that Defendants discriminated against them in violation of the Equal Protection Clause of the Fourteenth Amendment.  Specifically, Plaintiffs allege that they were only granted a "probationary" special permit for non-member events which did not cover the entirety of the Property, unlike the permits granted to three other clubs, and also plead that the two enforcement actions initiated by the Village against Plaintiffs evidence differential treatment.  (SAC ¶¶ 179-183.)  The SAC does not expressly state whether Plaintiffs are asserting

---

[14] "Grainger Aff." refers to Affirmation of Edmund C. Grainger, III, in Support of Defendants' Motion to Dismiss and in Opposition to Plaintiffs' Motion to Remand.  (Doc. 44.)

a "class of one" claim or a selective enforcement claim,[15] both of which may apply in the

absence of allegations that Plaintiffs belong to a protected class, *see Adam J. v. Vill. of

Greenwood Lake*, No. 10-CV-1753, 2013 WL 3357174, at *6 (S.D.N.Y. July 3, 2013), so I will

analyze their claims under both theories.

In order to establish a claim of selective enforcement, a plaintiff must plausibly allege

that "compared with others similarly situated, [it] was selectively treated[,] and . . . that such

selective treatment was based on impermissible considerations such as race, religion, intent to

inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

person." *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)

(internal citation marks omitted).  Such a claim requires pleading "more than selectivity in

enforcement; it requires selective enforcement based on impermissibly discriminatory or

malicious reasons."  *Gray v. Town of Easton*, 115 F. Supp. 3d 312, 320 (D. Conn. 2015).

Alternatively, under a class of one theory, a plaintiff must plausibly establish that

> (i) no rational person could regard the circumstances of the plaintiff to differ from
> those of a comparator to a degree that would justify the differential treatment on
> the basis of a legitimate government policy; and (ii) the similarity in circumstances
> and difference in treatment are sufficient to exclude the possibility that the
> defendants acted on the basis of a mistake.

*Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (internal quotation

marks omitted).

As a threshold matter, in order to state a viable claim pursuant to either theory, a plaintiff

must plausibly show that it was "treated differently compared to others similarly situated."

*Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004).  The

---

[15] Plaintiffs restate the standard for a class of one theory, (SAC ¶ 172), but do not expressly plead under this theory, and their opposition memorandum of law argues that they can make out a plausible claim under either this or a selective enforcement theory.  (Plaintiffs/Petitioners' Memorandum of Law in Opposition to Defendants/Respondents' Motion to Dismiss ("Ps' Opp. Mem."), (Doc. 60), 7.)

Second Circuit has not clarified "the degree of similarity that a plaintiff must show in order to adequately allege an equal protection claim under the selective enforcement theory." *Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 359 n.9 (S.D.N.Y. 2014). It is clear that in a class of one claim, plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves," *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006), such that the comparator's circumstances are "*prima facie* identical," *Norwood v. Salvatore*, No. 12-CV-1025, 2014 WL 203306, at *6 (N.D.N.Y. Jan 17, 2014) (emphasis in original) (internal quotation marks omitted). "The purpose of requiring sufficient similarity is to make sure that no legitimate factor could explain the disparate treatment," *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012), and to support the inference that "the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain," *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008). "In other words, the properties and circumstances being compared must be so similar that differential treatment with regard to them cannot be explained by anything other than discrimination." *Adam J.*, 2013 WL 3357174, at *7 (internal quotation marks omitted). It is well established that this pleading standard is "demanding." *Norwood*, 2014 WL 203306, at *7. In selective enforcement cases, plaintiffs must, at a minimum, plausibly allege comparators that are "similarly situated in all material respects," *Sharpe v. City of N.Y.*, No. 11-CV-5494, 2013 WL 2356063, at *4 (E.D.N.Y. May 29, 2013) (internal quotation marks omitted), *aff'd*, 560 F. App'x 78 (2d Cir. 2014), but less clear is whether they must also meet the more stringent "extremely high" standard applicable to class of one claims, *see Witt*, 992 F. Supp. 2d at 359 n.9 (internal quotation marks omitted) (collecting

cases and explaining disagreement within Second Circuit).  I need not decide whether the similarity analysis should be conducted under the same standard for both theories, because I find Plaintiffs have not met the less stringent "similarly situated in all material respects" test.

Plaintiffs allege that they are similarly situated to three other membership clubs in the MR district – the Mamaroneck Beach & Yacht Club, Orienta Beach Club and Beach Point Club – that are located along the Long Island Sound adjacent to single-family residential neighborhoods.  (SAC ¶ 175.)  Plaintiffs state that all four, including the Club, hold non-member events, of similar character and size, in recreational facilities located in the MR district, (*id.* ¶ 70), and therefore are all subject to the Village's requirement that they first "obtain a special permit from the [ZBA] . . . for periods of no more than three years, at which time an application for renewal must be made."  Village of Mamaroneck, N.Y. Code, § 342-35(B)(9)(a).  But unlike these three other clubs, which are located entirely within the MR zoning district, Plaintiffs' Property is split between the MR and R-20 zoning districts.  (SAC ¶ 21.)  Indeed, only approximately four of the Property's 116 acres lie within the MR District, whereas the vast majority is zoned R-20.  (*Id.*)  The SAC asserts that Plaintiffs' comparators all "sought and received the exact same Special Permit to hold . . . nonmember events on their respective entire properties," (*id.* ¶ 181), but this fails to account for the fact that the "entire properties" of those three other clubs all fell within the MR district, which expressly permits non-member activities, Village of Mamaroneck, N.Y. Code, § 342-35(B)(9), unlike the R-20 district, *id.* § 342-21; *see Karout v. McBride*, 7 F. Supp. 3d 194, 203 (D. Conn. 2014) (certain properties not "adequate comparators" for equal protection analysis because they were "governed by different provisions of the Zoning Regulations"); *Missere*, 826 F. Supp. 2d at 562 ("It is unsurprising, therefore, that [plaintiff] faced greater hurdles in operating a restaurant at [its location], where there was a

controversy surrounding whether a restaurant was a use authorized by the zoning code, than did
[another party at a different location], where a restaurant was concededly allowed.").

Plaintiffs also fail to allege facts that plausibly suggest they alone were wrongly
subjected to a "probationary" permit.  They provide insufficient information regarding previous
citations or complaints incurred by each of the four clubs that would allow the Court to
determine whether each entity was similarly situated at the time they applied for special permits.
*See Amid v. Vill. of Old Brookville*, No. 11-CV-3800, 2013 WL 527772, at *6-7 (E.D.N.Y. Feb.
7, 2013) ("[W]here a plaintiff claims to have been treated unfairly in a zoning/building context,
he must plead specific examples of applications and hearings that were similar to plaintiff's
application and demonstrative of the disparate treatment alleged," including specific
characteristics or traits permitting court to find similarity plausible); *Cooper v. Menges*, No. 11-
CV-862, 2013 WL 83004, at *7 (M.D. Pa. Jan. 7, 2013) ("Plaintiff asserts they were similarly
situated because they were all making a request for the same type of changes . . . .  We do not
think this is sufficient to show the businesses were similarly situated."); *Hafez v. City of
Schenectady*, 894 F. Supp. 2d 207, 226 (N.D.N.Y. 2012) (plaintiff failed to show similarity
where other property owner had not received citations and tickets for violations, as plaintiff had),
*aff'd*, 524 F. App'x 742 (2d Cir. 2013); *cf. Gray*, 115 F. Supp. 3d at 319 ("Plaintiffs insist that
[to] establish that another property owner is similarly-situated, [they] need only show that the use
of the property was the same; that is that other property owners actually were engaged in the
same regulated use.  But that is wrong.  Enforcement context, sequence, and timing also
matter.") (second alteration in original) (citation and internal quotation marks omitted).
Plaintiffs further do not explain how the four clubs can be similarly situated if the Property alone
is "environmental[ly] significan[t]" and resides in a "unique location."  (SAC ¶ 33) (internal

quotation marks omitted). The SAC, therefore, does not identify salient characteristics of the

alleged comparators that are necessary to plausibly allege the necessary degree of similarity.

Even assuming Plaintiffs were able to plead that they were similarly situated to their

comparators in all material respects, notwithstanding the distinctions cited above, they must

sufficiently allege selective treatment. Because Plaintiffs were granted a special permit with

respect to the portion of the Property falling within the MR district, the central distinction

between their permit and their comparators' is the "probationary" nature of Plaintiffs'. (*Id.* ¶

183.) But as Defendants note, (Ds' Mem. 3),[16] at least one of the other comparators, the

Mamaroneck Yacht & Beach Club, also received a special permit on December 3, 2009 that was

valid "for an initial probationary period of three (3) years." (*See* Grainger Aff. Ex. xviii, at Ex.

B.)[17] Accordingly, and contrary to the SAC, Defendants could not have "single[d] out

Hampshire Recreation as a 'bad actor' by making it the only club in the MR District on

probation." (SAC ¶ 186.)[18]

Plaintiffs have also failed to plausibly allege their other stated basis for selective

treatment – namely, that Defendants targeted Plaintiffs in multiple enforcement actions.

Plaintiffs contend that "the sole reason" behind Defendants' actions was Hampshire Recreation's

pursuit of rezoning for the Property, (*id.* ¶ 190), and that Defendants offered "no rational

justification" for their "inten[t] to harass" Hampshire Recreation, (*id.* ¶¶ 184, 186). Such

---

[16] "Ds' Mem." refers to Defendants' Memorandum of Law in Support of Motion to Dismiss. (Doc. 59.)

[17] For the reasons discussed earlier, I may consider this public document (although not the affidavit of the ZBA chairman to which it is attached). I also consider other special permits issued by the Village to various businesses in the years 2011-2015 that contain the same "probationary period" language. (*See* Grainger Aff. Ex. xviii, at Ex. A.)

[18] Plaintiffs claim that the ZBA granted Mamaroneck Beach & Yacht Club "a Special Permit to hold nonmember events free from any probationary condition." (SAC ¶ 110.) But the permit to which Plaintiffs cite, (*see* Pfeffer Aff. Ex. O), is not the original permit granted on December 3, 2009 – which, as noted above, *was* probationary – but in fact the renewal approved on March 7, 2013. Accordingly, Plaintiffs erroneously suggest that the two clubs' original permits were extended on different terms, when in fact both permits make clear that they are valid "for an initial probationary period of three (3) years."

allegations are merely conclusory and are insufficient to state a plausible claim that the differential treatment was motivated by malice or ill will.  *See Norwood*, 2014 WL 203306, at *9 (collecting cases).  Furthermore, Plaintiffs' claim of animus is grounded in the Village's response to the community's opposition to Plaintiffs' rezoning efforts.  But "[e]nmity directed toward a business property use may not form the basis for a constitutional claim because equal protection rights vest in individuals rather than business activities."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001).  "To the extent that the record reveals any hostility, it was directed at the proposed use of the property, not the owner, and therefore does not implicate the Equal Protection Clause."  *Toussie v. Town Bd. of East Hampton*, No. 08-CV-1922, 2010 WL 597469, at *10 (E.D.N.Y. Feb. 17, 2010).

And even if the Village's actions were based solely on community opposition, "such action would not be unconstitutionally arbitrary if the opposition is based on legitimate state interests."  *Harlen Assocs.*, 273 F.3d at 501 (internal quotation marks omitted).  Municipalities often, and legitimately, take action based on the views of the electorate or a portion thereof.  As the SAC acknowledges, both actions were based on Plaintiffs' alleged violations of Village laws requiring that membership clubs operating in the MR district obtain a special permit before holding non-member activities.  (SAC ¶¶ 62-64.)  It is undisputed that at that time, and unlike the comparators set out in the SAC, (*see* Pfeffer Aff. Ex. O), Plaintiffs had not obtained such a permit.  The Village's intent to ensure adherence to local laws by pursuing these enforcement actions is not equivalent to a "malicious or bad faith intent . . . to harm."  *Norwood*, 2014 WL 203306, at *5, *9 (granting motion to dismiss where plaintiffs had not alleged defendants were motivated by "anything other than a desire to secure their compliance with building codes and other local laws"); *see Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) ("If the motivation to

punish is to secure compliance with agency objectives, then by definition the motivation is not

spite, or malice, or a desire to get [someone] for reasons wholly unrelated to any legitimate state

objective.") (alteration in original) (internal quotation marks omitted).  Plaintiffs argue that

certain comparators, such as the Mamaroneck Beach & Yacht Club, also generated complaints

from the community about holding non-member events or causing adverse impacts upon the

neighborhood, yet were not subjected to any enforcement action.  (SAC ¶ 71.)  But Plaintiffs

have not alleged that that club's non-member events occurred without the requisite permit in

hand.[19]  *See Tower Props. LLC v. Vill. of Highland Falls*, No. 14-CV-4502, 2015 WL 4124499,

at *11 (S.D.N.Y. July 7, 2015) (insufficient showing of differential treatment where plaintiff

cited for presenting live entertainment without a permit, in absence of showing that comparator

that also presented live entertainment did so without permit).  Further "the Equal Protection

Clause does not require perfectly uniform enforcement efforts."  *Gray*, 115 F. Supp. 3d at 320;

*see Zahra v. Town of Southold*, 48 F.3d 674, 684 (2d Cir. 1995) ("[J]ust because [plaintiff] was

cited for a possible violation and these four other businesses were not, does not, standing alone,

establish a malicious or bad faith intent to injure," even though evidence suggested that other

businesses in zoning district may have engaged in nonconforming uses); *LeClair v. Saunders*,

627 F.2d 606, 608 (2d Cir. 1980) ("Mere failure to prosecute other offenders is not a basis for a

finding of denial of equal protection.").  And even if the Village had never previously cited

Plaintiffs for hosting non-member events without a special permit, (SAC ¶ 59), this posed no bar

to the Village doing so now.  *Cf. Clear Channel Outdoor, Inc. v. City of N.Y.*, 594 F.3d 94, 110-

11 (2d Cir. 2010) ("Plaintiffs complain of a self-inflicted wound.  They violated the City's duly

---

[19] Plaintiffs argue that they were singled out in that Defendants chose to "compel compliance" with the special permit requirement via lawsuits against them but not the other clubs.  (Ps' Opp. Mem. 9.)  But they allege no facts suggesting Defendants had to "compel" the compliance of the other clubs at all – in other words, that the other clubs were out of compliance, let alone out of compliance in the same time frame as Plaintiffs.

enacted zoning ordinance and seek to justify continued violation by citing a prior history of lax enforcement."); *Gray*, 115 F. Supp. 3d at 318-19 ("random underenforcement of the law by government authorities" regarding town's zoning requirements "neither wholly irrational nor presumptively discriminatory").

Accordingly, Plaintiffs have failed to plausibly allege sufficient similarity for purposes of a selective enforcement claim, and as such they surely cannot do so under the (presumably) more rigorous standard required pursuant to a class of one claim. *See Wright v. Manetta*, No. 14-CV-8976, 2016 WL 482973, at *3 (S.D.N.Y. Feb. 5, 2016) (similarity standard slightly less stringent in selective enforcement context compared to class of one context); *cf. Priolo v. Town of Kingston*, No. 10-CV-12092, 2011 WL 565626, at *2 (D. Mass. Feb. 9, 2011) ("The 'similarly situated' requirement is scrutinized with particular rigor in land use related cases lest every municipal dispute over property rights finds its way to federal court in the guise of an equal protection claim.").  Furthermore, even if the similarity necessary for a class of one claim were alleged, the Village's conduct is subject only to a rational basis review, which "requires the denial of an equal protection challenge 'if there is any reasonably conceivable state of facts that could provide a rational basis'" for Defendants' actions. *Toussie*, 2010 WL 597469, at *8 (quoting *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir. 2001)).  It is well settled that the Equal Protection Clause does not require that a legislature or governing decisionmaker "actually articulate at any time the purpose or rationale supporting its classification," but rather only that "a purpose may conceivably or may reasonably have been the [decisionmaker's] purpose and policy." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992) (internal quotation marks omitted).  I have already explained the legitimate bases for the Village's decision to initiate enforcement actions against Plaintiffs – namely, the desire to ensure compliance with local laws – which do not

constitute the "wholly irrational" or "presumptively discriminatory" grounds that Plaintiffs were required to plausibly allege. *Gray*, 115 F. Supp. 3d at 318. Accordingly, Plaintiffs also fail to adequately plead that Defendants violated the Equal Protection Clause under a class of one theory, and therefore the equal protection claim is dismissed.

     B. <u>First Amendment Retaliation</u>

Plaintiffs also argue that the Village retaliated against them for filing rezoning petitions and pursuing development proposals, which they argue is protected by the First Amendment. (SAC ¶¶ 196-201.) Defendants move to dismiss on the grounds that Plaintiffs' activity is not protected under the First Amendment, and that even if it were, Plaintiffs have failed to allege that Defendants' actions were motivated by the exercise of First Amendment rights, in that Plaintiffs can show "almost nothing of a negative or retaliatory nature." (Ds' Mem. 11-12.) In order to make out a First Amendment claim of retaliation, a plaintiff must plausibly allege that: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cty. of Nassau,* 732 F.3d 157, 160 (2d Cir. 2013) (per curiam). "The ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002). On a motion to dismiss, the court "must be satisfied that such a claim is supported by specific and detailed factual allegations, which are not stated in wholly conclusory terms." *Velez v. Levy,* 401 F.3d 75, 97 (2d Cir. 2005) (internal quotation marks omitted).

The First Amendment makes clear that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const.

amend. I.  The Second Circuit has not clarified whether a petition for rezoning constitutes a petition for redress of grievances, but has suggested that similar activities, such as an application for proposed development, do not.  *See Ridgeview Partners, LLC v. Entwhistle*, 227 F. App'x 80, 80-82 (2d Cir. 2007) (summary order) ("Appellant's claim that appellees have violated its right to petition the government for redress of grievances is legally insufficient because appellant's site-plan application does not purport 'to complain to public officials [or] to seek administrative [or] judicial relief from their actions.'") (alterations in original) (quoting *Dougherty*, 282 F.3d at 91).[20]

Although I lean toward the view that Plaintiffs' petitions for rezoning are not protected by the First Amendment, I need not decide the question, because even assuming they are, Plaintiffs fail to plausibly plead a causal connection between this activity and any retaliatory conduct.  A plaintiff must allege "a causal connection . . . sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse . . . action."  *Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir. 1994).  As an initial matter, here temporal proximity does not support an inference of causal connection.  The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001), but courts have found a "limit [of] two or three months" to be

---

[20] The Second Circuit's rulings in *Dougherty* and *Ridgeview Partners, LLC* came after *Hampton Bays Connections, Inc. v. Duffy*, 127 F. Supp. 2d 364 (E.D.N.Y. 2001), which Plaintiffs cite for the proposition that "applying for approvals and [construction] permits . . . is protected by the First Amendment right to petition government for the redress of grievances."  *Id.* at 373.  But even the district court in *Hampton Bays* noted that it did not find any "case [holding] that applying to a town planning board or similar entity for special use exception permits, site approval plans, or building permits is conduct protected by the First Amendment," *id.*, and subsequently the Second Circuit affirmed (albeit on other grounds) the dismissal of a claim of First Amendment retaliation in *Old St. George's LLC v. Bianco*, No. 08-CV-5321, 2009 WL 8668386 (S.D.N.Y. May 8, 2009), *aff'd*, 389 F. App'x 33 (2d Cir. 2010) (summary order), where the district court noted *Hampton Bays* but concluded that an application for inclusion of a parcel of property in a particular agricultural district was not conduct protected by the First Amendment, *id.* at *5-6. In any event, this question does not affect the outcome here.

reasonable, *see Adams v. Ellis*, No. 09-CV-1329, 2012 WL 693568, at *16 (S.D.N.Y. Mar. 2,

2012), *aff'd*, 536 F. App'x 144 (2d Cir. 2013) (summary order), and it is obvious that protected

activity must precede any purported retaliation to plead a claim of First Amendment retaliation,

*see Parkash v. Town of Southeast*, No. 10-CV-8098, 2011 WL 5142669, at *7 (S.D.N.Y. Sept.

30, 2011), *aff'd*, 468 F. App'x 80 (2d Cir. 2012) (summary order); *see also Musco Propane, LLP

v. Town of Wolcott Planning & Zoning Comm'n*, 536 F. App'x 35, 39-40 (2d Cir. 2013)

(summary order) ("[W]e would be hard-pressed to find a rational juror who could infer that a

course of action begun before [plaintiff's] protected speech could be caused by retaliation for

that First Amendment activity.").  Plaintiffs' First Rezoning Petition, which forms the basis for

their First Amendment challenge, (*see* SAC ¶ 198 (Plaintiffs' "right to apply to the Village

Board for land use approvals, including filing the Petitions to amend the Zoning Code in

accordance with the Comprehensive Plan, constitutes petitioning activity under the United States

and New York State constitutions.")), was filed on January 28, 2014, (*id.* ¶ 118), which plainly

followed the Village's NOV on September 27, 2013, (*id.* ¶ 56), as well as its two enforcement

actions in November 2013, (*id.* ¶¶ 62-64).

  Even if one interpreted Plaintiffs' protected activity to have begun in April 2012, when

they first announced their intent to pursue rezoning, (*id.* ¶ 44), the first purportedly retaliatory act

did not occur until approximately one and a half years later, far too late to support the required

plausible inference.  *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (causal

connection established where "protected activity [is] closely followed in time by the adverse

action") (internal quotation marks omitted).  The decision in *Karout v. McBride* is instructive

here.  The plaintiff in *Karout* attended several meetings and public hearings held by the Planning

and Zoning Board but alleged that the defendants "conspired" to meet in executive session to

"secretly discuss" and "continue to deny" the plaintiff's requested permit to open a business. *See* No. 11-CV-1148, 2012 WL 4344314, at \*2-3 (D. Conn. Sept. 21, 2012). The court noted the complaints that the plaintiff previously lodged with the city attorney in April and July 2010, as well as his allegation that the Planning and Zoning Board had unfairly continued to impose additional requirements upon him during his efforts to obtain the permit. *Id.* at \*5. Nonetheless, the court found "no factual allegations inferably connecting Defendants' rejection of Plaintiff's application for a Special Exception Permit in March 2011 with Plaintiff's complaints in 2010," and therefore dismissed the First Amendment claim for failure to plausibly allege retaliation. *Id.* Similarly, here, neither the Village's NOV nor its enforcement actions plausibly represent a basis for Plaintiffs' retaliation claim.

Nor do Plaintiffs' allegations that Defendants repeatedly rescheduled meetings, (*see* SAC ¶¶ 81, 84, 98), conferred in private, (*see id.* ¶¶ 140, 145, 152), declined to approve the special permit in the manner Plaintiffs requested, (*see id.* ¶¶ 103-08),[21] and ultimately chose not to approve rezoning for the Property, (*see id.* ¶¶ 130, 132-33, 138-39, 143, 146, 148, 153). Defendants' refusal to entertain Plaintiffs' applications constituted, at most, a "'refus[al] to consider or act upon grievances,'" which "does not violate the First Amendment." *Ridgeview Partners, LLC*, 227 F. App'x at 82 (quoting *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 465 (1979) (per curiam)). "[T]he First Amendment does not impose any affirmative obligation on the government to listen [or] to respond" to the exercise of activity protected under the First Amendment. *Smith*, 441 U.S. at 465. As a result, Defendants were "free" to, in their discretion, "ignore" the requests for rezoning. *Id.* at 466; *see Gregory v. Inc. Vill. of Ctr. Island*,

---

[21] It bears mentioning that the ZBA granted Plaintiffs' special permit for the MR portion of the Property (with provision for sufficient parking) on May 1, 2014, (Pfeffer Aff. Ex. A), and the Village Board amended local regulations such that special permits issued within the MR zoning district can now apply to portions of a property extending into adjoining residential zoning districts, (*see* note 12 above).

No. 14-CV-2889, 2015 WL 5093623, at *14 (E.D.N.Y. Aug. 28, 2015) ("[D]enying a request for redress is not the same thing as retaliating against the person requesting redress."); *Osborne v. Fernandez*, No. 06-CV-4127, 2009 WL 884697, at *44 (S.D.N.Y. Mar. 31, 2009) ("Whether the Plaintiffs' submissions would be considered or acted upon by . . . the Planning Board is a separate matter that does not retain a constitutional dimension."), *aff'd*, 414 F. App'x 350 (2d Cir. 2011) (summary order); *S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, No. 07-CV-12018, 2008 WL 4595369, at *18 (D. Mass. Sept. 30, 2008) (plaintiffs' permit applications not constitutionally protected by First Amendment, in part because they were not "immunize[d]" from opposition by "mere pursuit of government action").[22]  Accordingly, to the extent Plaintiffs argue that Defendants retaliated against them by denying their applications and efforts for rezoning, such a claim is not plausible.

Because of the absence of sufficient facts to allow the Court to plausibly infer that Defendants retaliated against Plaintiffs for activity protected by the First Amendment, the retaliation claim is dismissed.

C. Unconstitutional Taking

1. Ripeness

Defendants argue Plaintiffs have not suffered an unconstitutional taking of the Property for several reasons, including that Plaintiffs' claim is not ripe for adjudication.  (Ds' Mem. 15.)  I

---

[22] While an "ongoing course of adverse action . . . may serve as additional evidence of retaliatory intent," *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 375 (S.D.N.Y. 2011) (internal quotation marks omitted), the standard required for this showing is high, *see, e.g.*, *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994) (defendants systematically "undertook a purposeful aggravated and persistent course of conspiratorial noncompliance and nonenforcement" of relevant laws over course of decade); *Sherman v. Town of Chester*, No. 12-CV-647, 2015 WL 1473430, at *8 (S.D.N.Y. Mar. 31, 2015) (adverse action considered ongoing where defendants "singled out [plaintiff] . . . over the course of a decade to make sure he could never succeed in developing [property]") (internal quotation marks omitted); *Tomlins*, 812 F. Supp. 2d at 376 (plaintiff met burden where ZBA denied all variance applications over period of several years and imposed "additional – and seemingly increasingly unreasonable – procedural requirements").  Nothing similar is alleged here.

address Defendants' ripeness argument first because it is "a jurisdictional inquiry antecedent to a Court's ability to hear claims." *Novie v. Vill. of Montebello*, No. 10-CV-9436, 2012 WL 3542222, at *14 (S.D.N.Y. Aug. 16, 2012). The Court "must presume that [it] cannot entertain [Plaintiffs'] claims unless the contrary appears affirmatively from the record," *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) (internal quotation marks omitted). The concept of ripeness is "rooted in Article III's case or controversy requirement and the prudential limitations on the exercise of judicial authority." *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 460 (S.D.N.Y. 2008). The ripeness doctrine "ensure[s] that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution." *Dougherty*, 282 F.3d at 90. It also prevents a court from "entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur, depending on the final administrative resolution." *Id.* The ripeness requirement defers federal review of claims until they have "arisen in a more concrete and final form." *Murphy*, 402 F.3d at 347.

In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Supreme Court created a two-pronged ripeness test for the Fifth Amendment takings context: (1) the government entity must have rendered a "final decision" on the matter; and (2) the plaintiff must have "sought just compensation by means of an available state procedure." *Dougherty*, 282 F.3d at 88 (citing *Williamson Cty.*, 473 U.S. at 186, 194-95). Only when both elements are satisfied is a takings claim considered ripe for the court's review. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733-34 (1997). Because the Second Circuit has held that the second prong of *Williamson County* is satisfied "when a defendant removes a takings claim from state court to federal court," *Sherman v. Town of Chester*, 752 F.3d

24

554, 564 (2d Cir. 2014), I will focus on whether the Village rendered a "final decision" in this case.

The final decision requirement ensures that when analyzing a challenge to the constitutionality of a local land use decision, a federal court has "the benefit of a fully developed record, a precise demonstration of how local regulations would be applied to the particular property, and knowledge of whether a variance or approval of alternative plans could provide the relief the landowner seeks." *Lawson v. E. Hampton Planning & Zoning Comm'n*, No. 07-CV-1270, 2008 WL 4371297, at *3 (D. Conn. Sept. 22, 2008); *accord Lost Trail LLC v. Town of Weston*, 289 F. App'x 443, 445 (2d Cir. 2008) (summary order).  Until a final decision is rendered, "it is impossible to tell whether the land retain[s] any reasonable beneficial use." *Williamson Cty.*, 473 U.S. at 189 n.11.

"A final decision is 'a definitive position on the issue that inflicts an actual, concrete injury.'" *R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 448 (S.D.N.Y. 2003) (quoting *Williamson Cty.*, 473 U.S. at 193), *aff'd*, 115 F. App'x 465 (2d Cir. 2004) (summary order).  In the land use development context, a final decision requires that "a development plan must be submitted, considered and rejected by the governmental entity.  Even when the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until plaintiff also seeks variances that would allow it to develop the property." *Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 149 (E.D.N.Y. 2006) (internal quotation marks omitted).

Here Plaintiffs have not yet received a final decision and therefore their claim is not ripe for adjudication.  As Defendants note, (Ds' Mem. 13), it is clear from the record that at the time

Plaintiffs filed the SAC, Plaintiffs had not yet submitted an application to the Planning Board.[23]

*See BT Holdings, LLC v. Vill. of Chester*, No. 15-CV-1986, 2016 WL 796866, at *4 (S.D.N.Y.

Feb. 23, 2016) (takings claim not ripe where plaintiff failed to submit application to Planning

Board).  The Village's Zoning Code includes the following instructions regarding site

development plan approval:

### § 342-77.  Application procedure.

A. Presubmission.  Prior to a formal submission, the applicant should meet in person with the Planning Board and/or its designated representative to discuss the proposed site development plan in order to determine the requirements which should be incorporated in the development and submission of the site development plan.

B. Submission in three stages.  A site plan of any proposed development of land . . . shall be submitted to the Planning Board for approval.

Plaintiffs assert that they met with the Village Board to review their rezoning proposal and plans

for the Property, (SAC ¶ 44), and that the Village Board declined to refer the R-20 Alternative to

the Planning Board, (*id.* ¶ 132), but Village regulations clearly encourage parties to confer with

the Planning Board and require them to submit a site plan for proposed development to the same

body – neither of which the SAC alleges Plaintiffs did.  Not until June 26, 2015 did Hampshire

---

[23] Plaintiffs assert that "Hampshire Recreation will file a *second* as-of-right subdivision application with the Planning Board," (SAC ¶ 208) (emphasis added), which ordinarily would suggest that Plaintiffs had filed one previously.  But Plaintiffs pleaded only that they submitted an application to the Village Board, (*id.* ¶ 118), which is insufficient pursuant to Village law, Village of Mamaroneck, N.Y. Code, § 342-77.

Recreation file its first subdivision application with the Planning Board,[24] and clearly a final

decision cannot be rendered until the Planning Board's review is complete.[25]

Without a final decision from the Planning Board on Plaintiffs' application, "the Court's

assessment of plaintiff's injury caused by defendants' alleged constitutional violations is

speculative for Article III purposes." *Country View Estates*, 452 F. Supp. 2d at 150; *see Kittay v.

Giuliani*, 112 F. Supp. 2d 342, 349 (S.D.N.Y. 2000) (declining to invoke jurisdiction where

plaintiff "failed to obtain a final – or, for that matter, any – decision concerning" its property),

*aff'd*, 252 F.3d 645 (2d Cir. 2001) (per curiam).  The law is clear that "[b]efore commencing [a

takings] suit, a land developer must obtain . . . a definitive position as to how it can use the

property from the entity charged with implementing the zoning regulations."  *S&R Dev. Estates*,

588 F. Supp. 2d at 460.  No such closure is evident here.

Furthermore, even if Plaintiffs' development plan is rejected by the Planning Board,

courts within this Circuit have held that the developer must submit the plan to the relevant

---

[24] The SAC did not specify when Plaintiffs would submit this application, (*see* SAC ¶ 208), but Plaintiffs subsequently submitted a letter to the Court indicating that the application had been filed on June 26, 2015.  (Letter addressed to Judge Cathy Seibel from Michael D. Zarin dated August 17, 2015, (Doc. 65), 1.)  Defendants do not dispute this fact and further indicated that Plaintiffs had appeared before the Planning Board on July 8, 2015 regarding their application.  (Letter addressed to Judge Cathy Seibel from Edmund C. Grainger, III dated August 12, 2015, (Doc. 64), 1.)  Because "ripeness is a jurisdictional issue . . . properly considered under Rule 12(b)(1)," *Witt*, 992 F. Supp. 2d at 356, I am permitted to consider evidence and materials outside of the pleadings with respect to this inquiry, *see LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999); *Liberty Cable Co. v. City of N.Y.*, 893 F. Supp. 191, 199 n.11 (S.D.N.Y.) (collecting cases), *aff'd*, 60 F.3d 961 (2d Cir. 1995).  Although the events described in these letters were not authenticated via an affidavit or declaration, I will consider them because neither party disputes their authenticity nor asserts that there are reasons for the Court not to consider them.

[25] Plaintiffs allege that consideration before the Planning Board was merely an avenue for Defendants to "put Hampshire Recreation through a[n] . . . expensive and fruitless review," (SAC ¶ 1), culminating in a prolonged State Environmental Quality Review Act ("SEQRA") process, (*id.* ¶ 209), and ultimately the preclusion of any development.  Not only are those allegations conclusory, but SEQRA compliance is required under Village law, *see* Village of Mamaroneck, N.Y. Code, § 342-79, and is commonly part of a village's review regarding a proposed development plan, *see, e.g.*, *Fortress Bible Church*, 694 F.3d at 217 (SEQRA process "intertwined" with town's zoning regulations); *Cedarwood Land Planning v. Town of Schodack*, 954 F. Supp. 513, 515 (N.D.N.Y. 1997) ("SEQRA provides a comprehensive assessment scheme by which environmental considerations play a mandatory role in governmental decisionmaking early on in certain proposed actions.").  It is also likely that SEQRA review was particularly important here given Plaintiffs' intent to develop an "environmental[ly] significant" and "unique location."  (SAC ¶ 33.)

governing authority, here the ZBA,[26] for a determination as to whether a variance is appropriate. *See S&R Dev. Estates*, 588 F. Supp. 2d at 462; *see also Adrian v. Town of Yorktown*, 341 F. App'x 699, 700 (2d Cir. 2009) (plaintiffs did not submit revised application, seek variance or "present credible evidence that amended applications or variance requests would be futile"); *Murphy*, 402 F.3d at 352 (recognizing that appeal to ZBA may have identified available alternatives, and "[b]ypassing the [ZBA] and its hearing processes, which were statutorily designed for exploration and development of these sorts of issues, [left plaintiffs'] alleged injuries ill-defined"); *Dougherty*, 282 F.3d at 89 (despite five and a half year delay in processing plaintiff's application, and "considerable damage" alleged by plaintiff, taking claim not ripe for failure to request variance); *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 98 (2d Cir. 1992) (plaintiff did not obtain final decision because although first application for permit was denied, plaintiff was not precluded from submitting another proposal to board); *Kittay*, 112 F. Supp. 2d at 349 (plaintiff failed to seek approval or variance and therefore failed to satisfy final decision requirement); *Marathon Outdoor, LLC v. Vesconti*, 107 F. Supp. 2d 355, 362 (S.D.N.Y. 2000) (final decision requirement lacking because plaintiff failed to seek variance or waiver from applicable authority); *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 159 (E.D.N.Y. 2000) ("Even where the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until the

---

[26] The Village's Zoning Code includes the following provisions regarding applications to the ZBA for a variance:

**§ 342-90.  Powers and duties.**

The Board shall hear and decide appeals from and review from any order, requirement, decision, interpretation or determination made by any administrative official or board charged with the implementation or enforcement of this chapter and may reverse or affirm, wholly or partly, or may modify the order, requirement, decision, interpretation or determination appealed from and make such determination and order as, in its opinion, ought to be made in the premises.

Relatedly, Section 342-92 provides that the "Board of Appeals, on appeal from the decision or determination of the administrative officer charged with the enforcement of this chapter, shall have the power to grant use variances, authorizing a use of the land which otherwise would not be allowed or would be prohibited by the terms of this chapter."

plaintiff also seeks variances that would allow it to develop the property."); *Xikis v. City of N.Y.*, No. 89-CV-2000, 1990 WL 156155, at *5 (E.D.N.Y. Sept. 28, 1990) ("Having not applied for a variance, plaintiff cannot now say he has been denied 'all use' of his property.").[27]  Accordingly, Plaintiffs have failed to satisfy the first prong under *Williamson County*.

### 2.  Futility

Alternatively, Plaintiffs contend that their failure to obtain a final decision from Defendants should be excused under the futility exception.  (Ps' Opp. Mem. 18.)  A property owner will be excused from obtaining a final decision only "'if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile.  That is, a property owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied.'"  *Sherman*, 752 F.3d at 561 (quoting *Murphy*, 402 F.3d at 349); *see Lost Trail LLC*, 289 F. App'x at 445.  To demonstrate futility, a plaintiff must show (1) the inevitability of refusal of its application and (2) that it has already filed at least one meaningful application.  *Leonard v. Planning Bd. of Union Vale*, No. 13-CV-6034, 2016 WL 67791, at *4 (S.D.N.Y. Jan. 4, 2016).  It is well established that the standard for finding futility is high.  *See Sherman*, 752 F.3d at 563 ("But when the government's

---

[27] Even if the claim were ripe, Plaintiffs have not provided facts plausibly supporting their allegation that Defendants have "depriv[ed] [Plaintiffs] of any economically viable use of the Property."  (SAC ¶ 204.)  Putting aside that Plaintiffs may now use the entire property for non-member events, *see* note 21 above, the SAC indicates that they are still able to operate the Club and that the bulk of the property is zoned for single-family homes. "Plaintiffs have not alleged facts plausibly suggesting that the actions by the [Defendants] deprived them of all reasonable uses of their properties."  *Murtaugh v. New York*, 810 F. Supp. 2d 446, 481 (N.D.N.Y. 2011); *see Kabrovski v. City of Rochester*, No. 15-CV-6030, 2015 WL 7871057, at *7 (W.D.N.Y. Dec. 3, 2015) (taking "does not occur merely because a property owner is prevented from making the most financially beneficial use of a property"); *Donovan Realty, LLC v. Davis*, No. 07-CV-905, 2009 WL 1473479, at *5 (N.D.N.Y. May 27, 2009) ("mere diminution in value or inability to exploit property to the fullest economic extent" insufficient to support takings violation); *Sternglass v. Town of Woodbury*, 433 F. Supp. 2d 351, 356 (S.D.N.Y. 2006) (no taking where zoning change prevented property owner from "develop[ing] the land to its highest and best use"), *aff'd*, 251 F. App'x 21 (2d Cir. 2007) (summary order).

actions are so unreasonable, duplicative, or unjust as to make the conduct farcical, the high

standard is met.").

Plaintiffs have failed to show that Defendants have "dug in [their] heels and made clear

that all . . . applications will be denied."  *Murphy*, 402 F.3d at 349.  First, as discussed above,

Plaintiffs' first "meaningful application," *Leonard*, 2016 WL 67791, at *4, remains pending

before the Planning Board and they have not yet requested variances or land use approvals from

the ZBA.  Second, there is no indication that denial of Plaintiffs' application would be inevitable.

Plaintiffs have not alleged any animus traceable to the Planning Board, and the fact that the ZBA

accommodated Plaintiffs' desire to conduct non-member activities suggests the absence of the

sort of malice that would make denial inevitable.  This is further reinforced by the Village

Board's 2014 amendment to the Village Code, *see* Village of Mamaroneck, N.Y. Code, § 342-

35(B)(9)(a); *see also* notes 12 and 21 above, which effectively extended Plaintiffs' special permit

such that they can now hold non-member events on the entirety of the Property.

Plaintiffs' allegations of hostility and bad faith by the Village Board and the Zoning

Board of Appeals (many of which are conclusory) similarly fail to excuse their failure to obtain a

final decision.  (*See, e.g.*, SAC ¶¶ 49, 54, 101, 103; Ps' Opp. Mem. 18.)  Evidence of hostility by

local officials is not alone enough to satisfy the futility exception, *see, e.g.*, *S&R Dev. Estates*,

588 F. Supp. 2d at 463 ("Futility does not exist merely because of hostility to the developer's

plans."); *Goldfine*, 80 F. Supp. 2d at 160-61 (allegations of open hostility by or conspiracy

among defendants insufficient to show that refusal was certain); *Tri-State Video Corp. v. Town of

Stephentown*, No. 97-CV-965, 1998 WL 72331, at *4 (N.D.N.Y. Feb. 13, 1998) (futility

exception not met even where plaintiff alleged that town officials were "openly hostile" to

proposal).  Because there is no indication that Defendants have used "repetitive and unfair

procedures" or "engaged in a war of attrition" against Plaintiffs to avoid issuing a final decision, *545 Halsey Lane Props., LLC v. Town of Southampton*, No. 14-CV-800, 2015 WL 3824050, at *4 (E.D.N.Y. June 19, 2015) (internal quotation marks omitted),[28] Plaintiffs have not made a sufficient showing to invoke the futility exception required for their claim to be deemed ripe for adjudication.

## IV.   **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs already amended their complaint twice, including once after a pre-motion letter from Defendants, outlining their proposed grounds for dismissal, (Doc. 8), and a pre-motion conference before this Court on December 15, 2014.  Plaintiffs have not asked to amend again nor suggested that they possess facts that would cure the deficiencies identified in this opinion.

---

[28] Plaintiffs' allegation that members of the Village Board "express[ed] privately" that pursuit of the R-20 Alternative would require lengthy environmental review, with a likely outcome of rejection and adoption of "conservation zoning," (SAC ¶ 127), is "insufficient to show that the prospect of refusal is certain and invoke the narrow futility exception."  *Goldfine*, 80 F. Supp. 2d. at 161 (internal quotation marks omitted).  The SAC gives no reason to believe that this advice was anything but well-founded, but in any event it:  1) by its terms does not rule out approval; 2) is more benign than other behavior insufficient to meet the futility exception, *see, e.g.*, *id.* (Department of Environmental Protection representative failed to show up for site visits and misinterpreted regulations to make development more difficult); and 3) is not connected to the Planning Board or ZBA, *see Kowalczyk v. Barbarite*, 594 F. App'x 690, 693 (2d Cir. 2014) (summary order).  Likewise, the ZBA declining to consider additional materials submitted by Plaintiffs following the March 6, 2014 public hearing on their special permit application, (SAC ¶¶ 98, 101), hardly shows sufficient hostility to invoke the futility exception.

*See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014) (denying leave to amend proper where plaintiff had already failed to cure pleading deficiencies and did not specify what new facts it had that would cure those deficiencies) (collecting cases); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result).  Accordingly, I decline to grant leave to amend *sua sponte*.  *See Gallop*, 642 F.3d at 369 ("[N]o court can be said to have erred in failing to grant a request [to amend the complaint] that was not made."); *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP*, 351 F. App'x 472, 474 (2d. Cir. 2009) (summary order) (no abuse of discretion in granting motion to dismiss without *sua sponte* granting leave to amend).

## V.    State Law Claims

Having determined that the only claims over which this Court has original jurisdiction should be dismissed, I must consider whether to exercise supplemental jurisdiction over Plaintiffs' state law causes of action.  *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (confirming discretionary nature of supplemental jurisdiction); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").  "[W]here the Court declines to exercise supplemental jurisdiction, it has discretion to remand the case back to state

court." *City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 370 (S.D.N.Y. 2000). I have considered the factors set forth in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988) (court should consider judicial economy, convenience, fairness and comity in deciding whether to exercise supplemental jurisdiction), and decline to exercise supplemental jurisdiction over the remaining state law claims. Therefore I remand Plaintiffs' state law claims to the New York Supreme Court pursuant to § 1367(c)(3).

**VI.    Conclusion**

For the reasons stated above, Plaintiffs' Motion to Remand is DENIED as moot. Defendants' Motion to Dismiss is GRANTED. Plaintiffs' federal claims are dismissed with prejudice and Plaintiffs' state law claims are hereby remanded to the New York Supreme Court. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 40, 43), and close the case.

**SO ORDERED.**

Dated:  March 25, 2016
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

33